E-FILED
Thursday, 04 February, 2021  12:01:54 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DEANNA SMITHERS, as Independent Administrator of the Estate of THOMAS DALTON, deceased,<br><br>            Plaintiff,<br><br>        v.<br><br>PATRICK HARTSHORN, the SHERIFF OF VERMILION COUNTY, individually and in his official capacity VERMILION COUNTY, ILLINOIS; HAROLD HEATON;MARTIN WALWORTH; JAMES BIANCHETTA; JOSEPH WALTON; JERID SMITH; JASMINE MARTIN; and SHELLY HARDING, R.N.,<br><br>            Defendants. | Case No.  21-CV-2023<br><br><br><br>JURY DEMANDED |

## COMPLAINT

Plaintiff Deanna Smithers (hereafter, "Plaintiff"), as Independent Administrator of the

Estate of Thomas Dalton, (hereafter, "Mr. Dalton"), by counsel MEYER & KISS, LLC, alleges

as follows:

### INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation

under color of law of the rights of Mr. Dalton secured by the United States Constitution.

2.      On February 16, 2020, Mr. Dalton died in custody at the Vermilion County Jail,

where he was incarcerated for possession of a controlled substance.  Defendants knew that Mr.

Dalton was having medical issues for at least eight days prior to his death. During that period of

time, Mr. Dalton reported that he had difficulty breathing, had blood in his stools, and was

producing blood when he coughed. He also reported pain on his left side that radiated down from

his chest to his groin. Additionally, from February 15 into the morning of February 16, 2020, Mr.

Dolton repeatedly asked for help and to be taken to a hospital.  These complaints were

accompanied by obvious, objective symptoms of a serious medical need. Mr. Dalton became so

critically ill that he could no longer ambulate or stand.  Instead of calling paramedics to take Mr.

Dalton to a hospital, personnel at Vermilion County Jail ignored him and left him alone in his

cell where he died.  Mr. Dalton's death was preventable and could easily have been averted had

defendants arranged for him to be taken to a hospital.

## PARTIES

3.      Plaintiff is the duly appointed independent administrator of Mr. Dalton's estate

under Case No. 21-P-005 (Ill. Cir. Ct., Vermilion Cnty.).

4.      Defendant Patrick Hartshorn is the Sheriff of Vermilion County, Illinois, and is

sued in his individual and official capacities.

5.      Defendant Vermilion County, Illinois, is joined in this action pursuant to Carver

v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

6.      Defendants Harold Heaton, Martin Walworth, James Bianchetta, Joseph Walton,

Jerid Smith, and Jasmine Martin (collectively the "individual deputies") are sworn Vermilion

County sheriff's deputies who were assigned to the Vermilion County Jail.  Each of the

individual deputies were agents of defendant Patrick Hartshorn and defendant Vermilion County,

Illinois, and were acting within the scope of their agency, and under color of law, at all times

mentioned herein.  Each of the individual deputies is sued in his or her individual capacity.

7.      Defendant Shelly Harding, R.N., is a registered professional nurse who was an

agent of defendant Patrick Hartshorn and defendant Vermilion County, Illinois and was acting

within the scope of her agency and under color of law at all times mentioned herein.  She is sued

in her individual capacity.

2

## JURISDICTION & VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and

1367.

9.      Venue is proper under 28 U.S.C. § 1391(b) because one or more of the defendants

reside in this judicial district and all defendants are residents of Illinois.  Further, a substantial

part of the events and omissions giving rise to this claim occurred within this judicial district.

## FACTS AND CLAIM FOR RELIEF

10.     On January 30, 2020, Mr. Dalton was booked into the Vermilion County Jail.

11.     Upon arrival at Vermilion County Jail, Mr. Dalton was noted to have some pre-

existing medical conditions.

12.     On February 3, 2020, defendant Shelly Harding examined Mr. Dalton and noted

his past medical history and current medical problems, including his medication for drug

withdrawal. Defendant Harding ordered medication for Mr. Dalton. There is no indication in the

records that a medical doctor or nurse practitioner was consulted regarding the medication that

was ordered from Mr. Dalton.

13.     On February 8, 2020, Mr. Dalton submitted a Medical Request Form indicating

that since February 6, 2020, there had been blood in his diarrhea and that he made the

correctional officer aware of the problem.

14.     On February 9, 2020, Mr. Dalton submitted an Inmate Request Form indicating

that he already submitted a Medical Request Form, but the nurse would not be at the facility until

the following day and that his "blood issue" was urgent. Mr. Dalton further stated that he had

pain extending from his chest to his groin and that he needed help.

15.     On February 10, 2020, Shelly Harding went to Mr. Dalton's cell. Shelly Harding did not perform any exam on Mr. Dalton and simply told him that he was just experiencing "drug withdrawal".

16.     Defendant Shelly Harding's refusal to examine Mr. Dalton or get him a higher level of medical care demonstrated a complete disregard for his safety and wellbeing.

17.     Mr. Dalton continued to cough blood and excrete blood in his stool after Defendant Shelly Harding refused to examine him on February 10, 2020 until his death.

18.     On February 11, 2020, Mr. Dalton had a video court appearance. While being transported from the fourth floor to the booking area of the jail for video court, Mr. Dalton was so ill he had to sit on the floor of the elevator. Mr. Dalton was so weak and out of breath that he needed to be helped to his feet by Defendant Jerid Smith and correctional officer Anderson. There is no information in the records that either Defendant Jerid Smith or correctional officer Anderson notified anyone of the observation they made of Mr. Dalton. Specifically, there is no evidence that they notified a supervisor or medical staff.

19.     From approximately February 6 through February 16, 2020, Mr. Dalton's health severely deteriorated.  By February 16, 2020, Mr. Dalton was displaying obvious symptoms of a serious medical need, and negative changes in his mood, affect, appearance, and behavior. During this time, Mr. Dalton hardly left his cell and was wheezing, coughing up blood, and passing blood in his stool.  It would have been obvious to anyone, including individuals with no medical training, that Mr. Dalton's serious medical needs were not being met by employees of Vermilion County and Defendant Patrick Hartshorn, and that he needed to be promptly transported to a hospital for proper evaluation of a serious medical need.

20.     Starting on February 15 through the early hours of February 16, 2020, Mr. Dalton again requested medical attention.

21.     During the shift from 11 p.m. on February 15, 2020 until 7:00 a.m. on February 16, 2020, Defendants Jasmine Martin, Jerid Smith and Martin Walworth were made aware of Mr. Dalton's requests for medical attention and that Mr. Dalton was having trouble breathing and was coughing up blood. None of these Defendants contacted medical staff or attempted to get Mr. Dalton outside medical help.

22.     Instead of getting Mr. Dalton medical attention, Defendants Jasmine Martin, Jerid Smith and Martin Walworth ignored him.

23.     Around 4:00 a.m., on February 16, 2020, Mr. Dalton's requests for medical attention woke other inmates that were in the same housing unit.

24.     Mr. Dalton was crying and coughing up blood.

25.     While Defendants Jerid Smith and Jasmine Martin were passing out food trays around 6:30 a.m., Mr. Dalton again told them that he was coughing up blood and needed to go to the hospital.

26.     Defendant Jasmine Martin and Jerid Smith stated they would inform their supervisor regarding Mr. Dalton's complaints. Their supervisor was Defendant Martin Walworth.

27.     Defendants Jasmine Martin, Jerid Smith, and Martin Walworth ignored Mr. Dalton's obvious need for medical attention and his pleas for medical attention. Defendants Jasmine Martin, Jerid Smith and Martin Walworth failed to get Mr. Dalton any medical attention at all.

5

28.     After the shift change around 7:00 a.m. on February 16, 2020, Mr. Dalton and

other detainees in his housing unit continued to request help for Mr. Dalton.

29.     Defendants James Bianchetta, Joseph Walton and Harrold Heaton came on shift at

7:00 a.m. and remained until 3:00 p.m.

30.     Defendants James Bianchetta, Joseph Walton and Harrold Heaton all ignored the

pleas for help from Mr. Dalton and the other detainees in his housing unit.

31.     While passing out razors in the housing unit, Mr. Dalton and his cellmate

requested help directly from Defendant James Bianchetta. They informed James Bianchetta that

Mr. Dalton was coughing up blood, having trouble breathing and had heart issues.

32.     Defendant James Bianchetta responded with a sarcastic remarks regarding the

"definition of congestive heart problems" and that Mr. Dalton could "yell pretty loud for

someone who can't catch their breath."

33.     After lunch on February 16, 2020, Mr. Dalton and the detainees continued to

request medical attention. Defendant Bianchetta told Mr. Dalton he would have to wait until

Monday to see the nurse.

34.     The detainees got the attention of Defendant Joseph Walton, who was working in

the control room on February 16, 2020, and specifically requested that he get Mr. Dalton medical

attention. Defendant Joseph Walton failed to summon any medical help for Mr. Dalton.

Defendant Walton was informed of Mr. Dalton's symptoms, including coughing up blood and

difficulty breathing.

35.     Upon information and belief, Defendant Harrold Heaton was informed of Mr.

Dalton's medical issues and complaints. Defendant Harrold Heaton was working as the

6

supervisor on the 7:00-3:00 shift on February 16, 2020. Defendant Harrold Heaton failed to go

and check on Mr. Dalton or summon any medical help for him. The shift supervisors have the

authority to send a pre-trial detainee out of the facility to get emergency medical care.

36.     Around 2:30 p.m. on February 16, 2020, an inmate in the housing unit with Mr.

Dalton refused to lock up in order to get the attention of the correctional staff. In response,

Defendant James Bianchetta appeared on the housing unit.  Once there, Defendant James

Bianchetta entered the cell to check on Mr. Dalton.  Defendant James Bianchetta observed Mr.

Dalton laying in his bunk with "no apparent signs of life." Defendant James Bianchetta then

contacted Defendant Harrold Heaton. Only after finding Mr. Dalton completely unresponsive did

the individual deputies finally contact emergency medical services.  Efforts at resuscitating Mr.

Dalton failed.  He died on February 16, 2020.

37.     Defendants Jasmine Martin, Jerid Smith, and Martin Walworth staffed the

Vermilion County Jail from 11:00 p.m. to 7:00 a.m. on February 15-16, 2020.  On information

and belief, each of these defendants observed Mr. Dalton's condition and would have known that

Mr. Dalton 1) was critically ill, 2) had a serious medical need that was not being met by medical

staff at Vermilion County, and 3) needed to be hospitalized.  Despite this, each of the individual

deputies named in this paragraph ignored Mr. Dalton's serious medical needs and failed to

arrange for his transportation to a hospital to receive proper medical attention.

38.     Defendants James Bianchetta, Joseph Walton and Harrold Heaton staffed the

Vermilion County Jail from 7:00 a.m. to 3:00 p.m. on February 16, 2020.  On information and

belief, each of these defendants observed Mr. Dalton's condition and would have known that Mr.

Dalton 1) was critically ill, 2) had a serious medical need that was not being met by medical staff

7

at Vermilion County, and 3) needed to be hospitalized.  Despite this, each of the individual

deputies named in this paragraph ignored Mr. Dalton's serious medical needs and failed to

arrange for his transportation to a hospital to receive proper medical attention.

39.     Defendant Shelly Harding was the nurse staffed at the Vermilion County Jail

during Mr. Dalton's incarceration. On information and belief, Defendant Shelly Harding

observed Mr. Dalton's condition and would have known that Mr. Dalton 1) was critically ill, 2)

had a serious medical need that was not being met, and 3) needed to be hospitalized. Despite this,

Defendant Shelly Harding ignored Mr. Dalton's serious medical needs and failed to arrange for a

higher level of medical care, conduct a proper physical, or arrange for his transportation to a

hospital to receive proper medical attention.

40.     As a result of the unjustified and unconstitutional conduct of each of the

defendants, Mr. Dalton experienced pain, suffering, emotional distress, injury, and ultimately

death.  Each of the defendants acted intentionally, with malice, willfulness, and deliberate

indifference to the rights of Mr. Dalton, and violated Mr. Dalton's constitutional rights by

willfully ignoring his serious medical needs.

41.     Mr. Dalton is survived by a minor child.  As a direct and proximate result of

Defendants' unlawful conduct, plaintiff has experienced, and will continue to experience into the

future, pecuniary loss, including a loss of society.  As a further direct and proximate result of

Defendants' unlawful conduct, plaintiff has experienced, and will continue to experience into the

future, grief, sorrow, and mental suffering.

42.     Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta,

Joseph Walton, Harrold Heaton and Shelly Harding are each liable to plaintiff pursuant to 42

8

U.S.C. § 1983 based on their deliberate indifference to Mr. Dalton's serious medical needs, and their failure to intervene.

43.     Plaintiff additionally asserts Illinois state law claims of willful and wanton negligence against defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding.  Each of these defendants knew from their observation of Mr. Dalton that he was in need of immediate medical care and, through willful and wanton conduct, failed to take reasonable action to summon emergency medical services or other proper medical care.  Plaintiff asserts the same state law claims against defendants Patrick Hartshorn and Vermilion County under the doctrine of respondeat superior, based on the actions and inactions of each of the individual correctional officers and nurse.  Plaintiff additionally asserts a state law indemnification claim against defendants Patrick Hartshorn and Vermilion County pursuant to 745 ILCS 10/9-102.

44.     Plaintiff additionally asserts Illinois state law medical malpractice claims against Shelly Harding in that she committed medical negligence by failing to cause Mr. Dalton to be sent to hospital for emergency medical care, and her failure to do so proximately caused Mr. Dalton's death.  Plaintiff asserts the same state law claims against defendants Patrick Hartshorn and Vermilion County under the doctrine of respondeat superior.

45.     Plaintiff's state law claims are brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 et seq., for the pecuniary losses sustained by Mr. Dalton's next-of-kin, and the Illinois Survival statute, 755 ILCS 5/27-6, for Mr. Dalton's conscious pain and suffering prior to death.

## Causes of Action:

### I.        Claims under 42 U.S.C. 1983: Defendant Patrick Hartshorn

46.        Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

47.        Plaintiff is entitled to relief against Defendant Patrick Hartshorn under 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment to the U.S. Constitution.

48.        At all times material, Plaintiff's decedent, Thomas Dalton, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the Vermilion County Jail, and to have his health issues timely and properly assessed and treated.

49.        Defendant Patrick Hartshorn deliberately disregarded the immediate and serious threats to the mental and medical health and well-being of persons in the Vermilion County Jail and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

50.        Defendant Patrick Hartshorn was well aware that there were detainees confined in the Vermilion County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendant Patrick Hartshorn intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

51.        Defendant Patrick Hartshorn knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, and that the threat of this was imminent

and immediate.

52.     Defendant Patrick Hartshorn deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that:

   a.  with full knowledge of prior in-custody deaths, and that failing to provide adequate medical care to detainees with serious medical issues could die were reasonably foreseeable, Defendant Patrick Hartshorn simply failed to provide needed care and attention;

   b.  with full knowledge of detainees with histories of serious medical issues, Defendant Patrick Hartshorn's actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

53.     In light of the aforementioned, Mr. Dalton suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Patrick Hartshorn. Defendant Patrick Hartshorn reacted to this risk in an objectively and subjectively unreasonable manner.

54.     It is more likely than not that the failures of Defendant Patrick Hartshorn as alleged above were the cause of Mr. Dalton's death.

55.     As a result of Defendant Patrick Hartshorn's disregard of and indifference to

plaintiff's decedent's constitutionally protected right to be provided with proper care, plaintiff's

decedent, Thomas Dalton's medical needs were ignored.

56.     As a direct and proximate result of Defendant Patrick Hartshorn's deliberate

indifference to Mr. Dalton's serious medical health needs, Mr. Dalton died from complications

of serious medical issues on February 16, 2020.

WHEREFORE, Plaintiff prays for judgment as noted below.


**II.      Claims under 42 U.S.C. 1983: Defendants Jasmine Martin, Jerid Smith, Martin
         Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding**

57.     Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

58.     Plaintiff is entitled to relief against Defendants Jasmine Martin, Jerid Smith,

Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding under

42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

59.     At all times material, plaintiff's decedent, Thomas Dalton, had a constitutionally

protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care

while in the Vermilion County Jail, and to have his serious medical issues timely and properly

assessed and treated.

60.     Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta,

Joseph Walton, Harrold Heaton and Shelly Harding deliberately disregarded the immediate and

serious threat to the health and well-being of persons in the Vermilion County Jail in need of

medical treatment and exhibited deliberate and callous indifference to serious medical and

mental health needs, by denying access to intensive and structured medical care, treatment and

observation necessary to treat serious medical needs and prevent suffering and death.

61.     Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding were well aware that there were inmates who suffered from severe medical needs and were at risk of injury and/or death. Despite this knowledge, defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

62.     Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could be seriously injured and/or die, that such injuries and/or deaths were reasonably foreseeable, that the threat injuries and/or death was imminent and immediate.

63.     Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical needs by denying and unreasonably delaying access to competent medical care to treat their serious medical issues.

64.     In light of the aforementioned, Thomas Dalton suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding, and these defendants reacted to this risk in an objectively and subjectively unreasonable manner.

65.     It is more likely than not that the failures of Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding as alleged above were the cause of Mr. Dalton's death.

66.     As a direct and proximate result of Defendants Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding's deliberate indifference to Mr. Dalton's serious medical needs, Mr. Dalton died on February 16, 2020.

WHEREFORE, Plaintiff prays for judgment as noted below.

### III.     *Monell* Claim: Patrick Hartshorn as Sheriff of Vermilion County

67.     The violations of Thomas Dalton's constitutional rights under the Fourteenth Amendment to the United States Constitution, his damages and the conduct of the individual defendants, were directly and proximately caused by the actions and/or inactions of the Vermilion County Sheriff, which has, with deliberate indifference:

a)      failed to establish and/or implement policies, practices and procedures to ensure that detainees at the Vermilion County Jail receive appropriate medical care for serious medical needs, and if necessary, health care services outside the jail. Specifically, it was a widespread practice and/or official policy at the Vermilion County Jail not to contact emergency medical services on behalf of an inmate experiencing an obvious medical emergency without the prior approval of a supervisor, even where such approval was wrongfully withheld or denied. The Sheriff's department keeps track of the number of trips detainees take to outside facilities as they need to stay within their budget;

14

b)      failed to establish and/or implement policies, practices and procedures

to ensure that detainees at the Vermilion County Jail receive appropriate

medical care for serious medical health needs. Specifically, there is no medical

staff at the facility from 3:00 p.m. until 8:00 a.m. the following day and no

medical staff present during the weekend. The correctional officers receive no

medical training from the jail nurse and are not required to maintain their CPR

certification;

c)      failed to adequately monitor the deteriorating mental and medical health

conditions of inmates. Specifically, correctional officers routinely fail to conduct

their mandatory cell checks, and even when they are conducted, the correctional

officers do not properly conduct the cell checks to ensure the detainees are

breathing or otherwise alive;

e)      failed to ensure through training, supervision and discipline that medical

staff at the Vermilion County Jail, in necessary circumstances, make a

referral for health care services outside the jail;

f)      failed to ensure through training, supervision and discipline that

correctional and medical staff adequately communicate and document

inmates' deteriorating mental and medical health conditions;

g)      failed to ensure through training, supervision and discipline that

correctional and medical staff properly respond to inmates' deteriorating

mental and medial health conditions;

h)      failed to contract for medical health services in a manner where financial

15

incentives would not interfere with  referring inmates for health care services

outside the jail;

i)        possessed knowledge of deficiencies in the policies, practices, customs

and procedures concerning inmates, and approved and/or deliberately

turned a blind eye to these deficiencies.

For example, one or more policymakers were made aware of the misconduct which led to

the following lawsuits:

a.        *Jones v. Hartshorn*, No. 15-CV-2032, 2017 WL 3140360, at *4

(C.D.Ill. July 24, 2017) (summary judgment is denied to Defendant

Vermilion County jail guard on Plaintiff's claims arising from

plaintiff's dermatitis, tooth decay, and alleged rectal bleeding

during his 2013 detention in the Vermilion County Jail).

b.        *Jones v. Vermilion Cty. Jail*, No. 15-CV-2032, 2015 WL 9217110,

at *1 (C.D. Ill. Dec. 17, 2015) (allowing detainee's claims of

inadequate medical care to proceed when detainee was not given

treatment for serious   medical conditions like diabetes, heart

disease, dermatitis, rectal bleeding, and tooth decay).

c.        *Cox v. Hartshorn*, 503 F. Supp. 2d 1078 (C.D. Ill. 2007) (alleging

that jail officials refused to provide him adequate medical care).

d.        *Catron v. Vermilion County Jail*, No. 2:13-cv-02271-HAB (filed

Dec. 10, 2013) (alleging jail officials refused to fill his prescription

for pain killers to address his chronic pain based on Defendant

16

Hartshorn's policy).

e.        *Hayes v. Hartshorn*, No. 05-2282, 2009 WL 722579 (C.D. Ill. Mar.

17, 2009) (alleging that that Nurse Galloway and Defendant

Hartshorn failed to provide adequate medical care).

f.        *Smith v. Hartshorn*, No. 09-2142, 2009 WL 2195909 (C.D. Ill. July

14, 2009) (alleging that jail medical staff and Defendant

Hartshorn failed to provide prompt treatment after plaintiff cut

his elbow).

g.        *Williams v. Lewellyn*, No. 15-CV-2254, 2015 WL 6689643 (C.D.

Ill. Nov. 2, 2015) (alleging that jail personnel failed to

provide medical treatment after jail guards injured plaintiff

arm).

h.        *Estate of Moore v. Vermilion County*, No. 19-CV-2209 (C.D. Ill)

(alleging that Mr. Moore died in the Vermilion County Jail after he was

beaten, and jail personnel failed to provide medical treatment)

i.        *Dorris v. Hartshorn*, No. 08-CV-2041, 2009 WL 2431310 (C.D.

Ill. Aug. 6, 2009) (alleging that jail staff unconstitutionally denied

plaintiff medical care).

j.        *Miller v. Hartshorn*, No. 18-CV-2050-CSB-EIL (filed Feb. 9,

2018)(alleging that jail personnel refused to render medical aid or

call an ambulance for a mother that delivered an infant into a toilet

bowl).

WHEREFORE, Plaintiff prays for judgment as noted below.

### IV.    State Claim for Wrongful Death: Patrick Hartshorn as Sheriff of Vermilion County

68.    Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

69.    Thomas Dalton is survived by his minor child, who constitutes his heir under Illinois law.

70.    Mr. Dalton was officially pronounced dead on February 16, 2020.

71.    The wrongful death of Mr. Dalton was proximately caused by the neglect, default, and/or willful and wanton conduct of the defendants, as described above, in violation of 740 ILCS § 180/1.

72.    Defendant Vermilion County and Hartshorn's employees Jasmine Martin, Jerid Smith, Martin Walworth, James Bianchetta, Joseph Walton, Harrold Heaton and Shelly Harding failed to properly monitor and/or report the declining health and well-being of Mr. Dalton.

73.    The wrongful conduct of Defendant Vermilion County and Hartshorn's employees was the direct and proximate cause of injury and damage to Mr. Dalton and his estate.

74.    The heirs of Mr. Dalton have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their   father, and have incurred funeral and burial expenses as a proximate result of his wrongful death.
WHEREFORE, Plaintiff prays for judgment as noted below.


### V.    735 ILCS 5/2-622- Medical Malpractice Defendant Shelly Harding

75.    The plaintiff re-alleges the previous allegations.

18

76.      In the manner described more fully above, in rendering medical care to Mr. Dalton and/or holding herself out as a professional who was rendering medical care to Mr. Dalton, Shelly Harding had a duty to possess and apply the skill and care of reasonable well-qualified medical personnel in the same and similar circumstances.

77.      Defendant Shelly Harding, in derogation of her aforementioned duty, was negligent in the provision of medical care to Mr. Dalton. Mr. Dalton's injuries and death were sustained as a direct and proximate result of one or more of the negligent acts and/or omission of Shelly Harding.

75.      As a direct and proximate result of defendant Shelly Harding's medical malpractice, the heirs of Thomas Dalton have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their father, and have incurred funeral and burial expenses as a proximate result of his wrongful death.

76.      In Support of certain Counts of this Complaint, Plaintiff appends an Affidavit for Defendants Vermilion County and Shelly Harding, signed by the Plaintiff's Counsel which comports with 735 ILCS 5/2-622.  The said Affidavit is attached hereto and incorporated as though plead herein as Exhibit 1.

WHEREFORE, Plaintiff prays for judgment as noted below.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against each of the defendants on all federal-law claims and that Plaintiff be entitled to reasonable attorneys' fees and costs, and that appropriate compensatory damages be awarded against each of the defendants on all state law claims.

19

By:   */s/ Louis J. Meyer*

Louis J. Meyer
MEYER & KISS, LLC
311 W. Stratford Drive
Peoria, IL 61614
t. 309.713.3751
f. 312.585.7803
e. louismeyer@meyerkiss.com
w. www.meyerkiss.com